9 F.3d 1550
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
BURCH AND CRACCHIOLO PA, Plaintiff-counter-defendant-Appellant,
v.
Edward F. TILYOU, Defendant-counter-claimant-Appellee.
 No. 92-15903.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1993.
Decided Nov. 1, 1993.
 
 Before: TANG, TROTT, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Burch & Cracchiolo, P.A. ("Burch") appeals the district court's summary judgment in favor of Edward F. Tilyou II in its action seeking compensation for legal services provided by F. Michael Carroll, who assigned his rights to Burch. The only disputed issue concerned the matter in which Tilyou agreed to pay Carroll for Carroll's legal services. Burch contended that Tilyou was personally liable for the fees. Tilyou contended that he was not personally liable because he was acting in his capacity as co-personal representative of the Estate of Florence J. Tilyou when he hired Carroll. The district court determined that Tilyou was not yet liable. We reverse.
 
 
 3
 The interpretation of a contract is a mixed question of law and fact. L.K. Comstock & Co., Inc. v. United Eng'rs & Constructors, Inc., 880 F.2d 219, 221 (9th Cir.1989). While findings based on extrinsic evidence are fact questions, analysis of contract language and application of principles of contract interpretation are legal questions. Id. Under Arizona law, "the plain language of the contract must control." Campisano v. Phillips, 547 P.2d 26, 30 (Ariz.Ct.App.1976). When a contract lacks an explicit provision addressing a particular term, courts may consider circumstances surrounding the transaction to determine the parties' intent when they entered the agreement. Burkons v. Ticor Title Ins. Co., 813 P.2d 710, 715-16 (Ariz.1991) (en banc). "[I]f some terms of the oral contract ... [are] missing or uncertain, 'extrinsic evidence is always admissible to aid in interpretation and to establish the meaning that was intended by the parties.' " Arok Constr. Co. v. Indian Constr. Serv., 848 P.2d 870, 877 (Ariz.Ct.App.1993) (citation omitted).
 
 
 4
 Tilyou and his brother, who were the two co-personal representatives of the estate, had been embroiled in disputes for some time. In 1980, they entered into a settlement agreement which resolved those disputes, but further trouble broke out in 1984 and 1985. It involved a suspicious sale of estate property to Tilyou's brother. Tilyou sought legal help from Carroll.
 
 
 5
 On April 11, 1985, Carroll wrote to Tilyou, outlined the nature of the legal problem, stated his hourly rate, and indicated that his fees were payable monthly. The memorandum did not say who was to pay those fees. On December 10, 1985, Carroll wrote again, referred to the settlement agreement between Tilyou and his brother, and stated that the agreement required Tilyou to bear his own attorneys fees. Carroll also stated that under a recent Arizona case it was possible that the attorneys fees could come from the estate. He observed that Tilyou had decided to pay the attorneys fees from the estate account forthwith and had indicated that he would reimburse the estate if a court decided that he should not have paid those fees in that fashion. Finally, Carroll wrote that he and his firm were to be assured of payment and that Tilyou would pay the fees if the court decided that the estate should not. A few months later--April of 1986--Carroll sent two more letters. In the first of those letters he expressed his belief that the estate would be allowed to pay the fees, but said that the fees should not be paid out of the estate at that time. He asked that payment be made from another source. In the second letter he again asked that the fees be paid from another source.
 
 
 6
 The district court decided that the letter of December 10, 1985 expressed a clear agreement that the estate was to pay Carroll and that Tilyou would only have liability if it was determined that the fees were not proper estate expenses. We cannot agree. That letter is evidence (perhaps even very good evidence) of what the agreement itself was, but it is far from being that agreement. The earlier and later letters are of no particular help, except that they do suggest that Carroll believed he was to be paid without regard to what the probate court might do or not do. In other words, determining the actual terms of the agreement between the parties presents an issue of material fact which precludes summary judgment. See Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 7
 Were we in doubt about our conclusion, that doubt would be removed by the positions taken by the parties. Neither of them believes that the letter of December 10, 1985 is their agreement. Carroll submitted an affidavit in which he asserted that under the terms of the true agreement Tilyou must personally pay the fees in any event. For his part, Tilyou insists that under the true agreement he need never make personal payment of Carroll's fees. On this record both views are plausible. Thus, we do not--cannot--say what the actual agreement was. That knowledge must await further proceedings in the district court.
 
 
 8
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3